(78 South. 896)

SLOSS–SHEFFIELD STEEL & IRON CO. v. CITY OF BIRMINGHAM. (6 Div. 558.)

(Supreme Court of Alabama. May 9, 1918.)

1. MUNICIPAL CORPORATIONS ⬳439—ASSESSMENTS—BENEFITS.

Land which is used voluntarily by the owner for a given business may be assessed for a local improvement which benefits such land generally, even though such improvement does not benefit such land for the purposes for which it is actually used.

2. MUNICIPAL CORPORATIONS ⬳439—ASSESSMENTS—BENEFITS.

Land abutting on a street, used by its owner, a steel company, for a slag pile dump, etc., was properly assessed for street improvements, although benefited thereby only generally by being made more suitable for other purposes, such as small manufacturing and wholesale mercantile sites.

3. MUNICIPAL CORPORATIONS ⬳511(2)—APPEAL FROM ASSESSMENT—BURDEN OF PROOF.

Under the direct provisions of Code 1907, § 1393, a landowner appealing to the circuit court from assessments of municipal authorities for street improvements has the burden of proving the assessments excessive.

4. MUNICIPAL CORPORATIONS ⬳511(2)—APPEAL FROM ASSESSMENT—EVIDENCE.

On appeal to circuit court from municipal assessments for street improvements, appellant contending that the assessed property, being devoted to use for slag pile, was not benefited by the improvements, it was proper to allow the city to cross-examine appellant's witness as to what disposition appellant made of the slag, to show that the slag pile was not necessarily a permanent incubus on the property.

5. APPEAL AND ERROR ⬳1033(3)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Exclusion of evidence which would have tended to establish appellee city's hypothesis of assessable value of appellant's property was not harmful to appellant landowner.

6. APPEAL AND ERROR ⬳1048(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Refusal to permit a question to witness which had already been answered, and the answer not denied by any witness, was harmless.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Proceeding by the City of Birmingham to assess property of the Sloss-Sheffield Steel & Iron Company. From a judgment sustaining the assessment on appeal to circuit court, the company appeals. Affirmed.

Tillman, Bradley & Morrow and Roy M. Sterne, all of Birmingham, for appellant. M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellee.

SAYRE, J. This case has arisen out of a proceeding to assess the value of certain street improvements against the abutting property of appellant. On appeal to the circuit court a jury sustained the assessment that had been made by the municipal authorities, and in this court, on further appeal, the main question under discussion is whether the circuit court erred in overruling appellant's motion for a new trial.

Appellant's complaint is that the verdict, which the trial court allowed to stand, was contrary to the law and the evidence; more specifically that, necessarily in view of the evidence, the amount of the assessment was fixed on an erroneous theory. This involves questions of law and of fact.

The Constitution (section 223) provides that no assessment in cases of this sort shall be in excess of the increased value of the abutting property by reason of the special benefits derived from the improvement. The courts are not in entire accord as to how and on what basis increased value is to be estimated. However, we think no better statement of a correct rule will be found than that expressed by the Supreme Judicial Court of Massachusetts in Driscoll v. Inhabitants of Northridge, 210 Mass. 151, 96 N. E. 59, where it is said:

"The inquiry is, How much has the particular public improvement added to the fair market value of the property, as between a willing seller and a willing buyer, with reference to all the uses to which it is reasonably adapted and for which it is plainly available, prospective as well as present, by strangers as well as by the owner?"

But the question remains: How far ahead and to what circumstances may the assessing authority look? And in the case from which we have just quoted the court proceeded to say:

"Chances and probabilities of future use, if sufficiently near in time and definite in kind to be of practical importance, enter into present market value, and so far as they enhance or diminish it are to be given full weight. But where they are so remote as to rest chiefly in the imagination, and do not in fact influence the price which customers would be willing to pay in a present sale, they cannot be the basis of a determination of benefit or value."

We find in section 578 of 1 Page & Jones on Taxation by Assessment that:

"Cases are not infrequently presented in which the improvement for which it is sought to levy an assessment would confer an especial benefit upon the land assessed if such land were used for ordinary purposes, or for any one of a variety of purposes to which it might be put, but in which the land is used by the

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

owner thereof for a special and peculiar purpose, and the improvement in question does not confer any benefit or any substantial benefit upon the land in question while devoted to such special use. In cases of this sort, the question which is presented is whether such land is to be considered as benefited by the improvement on the theory that benefit is a question of the use which might be made of the land, or whether such land is to be considered as not benefited on the theory that the present and actual use of the land controls the question of benefit. On this question we find a conflict of authority."

The authors, referring in the footnote to a number of adjudicated cases, express the opinion that:

"If the land is owned by a private person or corporation, and is devoted to a special private use by reason of which it is not benefited by the public improvement, the true rule would seem to be that the right to assess such land is not restricted by the fact of such special and peculiar use. Private owners ought not to be free at their pleasure to withdraw land from the operation of the taxing power and to throw a corresponding burden either upon the other property owners or upon the general taxpayers. If the appropriation to the peculiar use in question is purely voluntary, the owner may change such use at his pleasure, and thus obtain the benefit accruing from the improvement. * * * Land which is used voluntarily by the owner for a given business may be assessed for a local improvement which benefits such land generally, even though such improvement does not benefit such land for the purposes for which it is actually used."

[1, 2] Accepting the foregoing views as sound, as we do, it cannot be said, on the record, that there was on the part of the court and jury a failure to apply them, or an erroneous application of them, to the case made by the evidence.

Two assessments were involved in this proceeding. They were, however, tried together, and there was no effort made to discriminate between the two properties in respect of differences in their situation or condition as having probable or possible effect upon the application of the foregoing rules. One assessment was against property on the north side of First avenue in the city of Birmingham; the other against property on the opposite side of the avenue. On the north side appellant had used its property as a dumping place for slag, and the slag pile so created extended down pretty well to the margin of the street. On the other side, 70 feet back from the sidewalk, there was a row of coke ovens the use of which had been discontinued. The intervening space was used for the storage of pig iron pending shipment and accommodated a railroad track—a spur track, we infer, used for hauling things to and from appellant's property. Witnesses referred to a diagram, which, evidently, was before the jury, but does not appear in the transcript. We are therefore not accurately informed as to the distribution of appellant's furnaces, shops, and other buildings over its larger contiguous tract of land, but that they were very near at hand is clear. Witnesses for appellee gave opinions as to the benefit

to be conferred on appellant's property—meaning, we take it, that part of appellant's property subjected to the assessment—on the hypothesis that by its location it was suitable for wholesale mercantile houses and small manufacturing establishments. Their estimates conformed closely to the assessments that had been made by the municipal authorities, and these latter were confirmed and adopted by the jury without change. Appellant's theory was that the proposed improvement conferred no benefit whatever upon its property in the use to which it was then devoted, and that to clear away its own improvements—so to speak of the slag pile, coke ovens, railroad track, etc.—so as to make the property available for the other uses to which its mere location pointed, would cost more than the property would be worth after the change. The first branch of appellant's contention, it may be conceded, was established by the evidence without conflict; but as to the second, in the extreme shape in which it was presented, namely, that it would cost more than the property would be worth to make it fit for a different use, or quite as much, we think it may be fairly said that the jury were warranted in drawing a conclusion to the contrary. The court gave the law of the case in charge to the jury substantially, though not elaborately, in accord with the rule which we have approved as reasonable and just; and while it may now seem that the assessments were rather abundantly large, there was no compromise in the attitude or the evidence of either party on this point, and it can hardly be held for error that the jury's finding was allowed to stand.

Charge 1, given for appellee, in a general way stated the law as we have found it.

[3] Charges 6 and 7, likewise given for appellee, correctly laid down the proposition that upon appellant, who had taken the appeal from the assessment of the municipal authorities to the circuit court, rested the burden of proving that the assessments were excessive. The statute so provides. Code, § 1393; City of Decatur v. Brock, 170 Ala. 149, 54 South. 209.

[4] There was no error in allowing appellee on cross-examination of the witness McQueen to ask what disposition his company (appellant) made of the slag as it was dumped on the slag pile. The answer was, "We give the city what they want, and have an arrangement by which we contract to remove the balance." This testimony went to show that the hypothesis, as to probable or possible future and different uses of the property upon which appellee's witnesses based their estimates of value, were not so remote or imaginary as to deserve exclusion from consideration. It went to show that the slag pile was not necessarily, nor even probably, a permanent or remediless incubus on the property.

[5, 6] Nor was there reversible error in refusing to allow appellant on the other hand

to ask two questions (assignments of error 3 and 4), answers to which, we may assume, would have tended to show that appellant gave the city slag from its pile, and that the city moved about 100 cubic yards of slag from the pile every day. The refusal of these questions was not harmful to appellant because, as we have already indicated, they tended to establish that hypothesis on which appellee's witnesses based their opinions as to prospective value. As to the first of them it may be observed also that it had already been answered, nor was the answer denied by any witness.

Affirmed. All the Justices concur.